UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RONALD W. WHITAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:08-1225 |
| ) | Judge Echols |
| TENNESSEE VALLEY AUTHORITY ) | |
| BOARD OF DIRECTORS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This disability and age discrimination case arose after Plaintiff Ronald W. Whitaker ("Whitaker") was not selected for one of seven open Machinist positions at the Cumberland Fossil Plant ("Cumberland facility" or "Cumberland plant") operated by the Tennessee Valley Authority ("TVA"). Defendants TVA Board of Directors have filed a Motion for Summary Judgment (Docket Entry No. 8), to which Plaintiff has responded in opposition (Docket Entry No. 16), and Defendants have replied (Docket Entry No. 20).

## FACTUAL BACKGROUND

Plaintiff is a journeyman Machinist. He has a lengthy work history in the mechanical maintenance and machinist fields, including contract work for the TVA and employment as a high school auto mechanics teacher.

In September 2004, the TVA decided to fill seven vacant Machinist positions at the Cumberland plant. Plaintiff, who was 51 years old at the time, submitted an application for the positions.

1

The TVA has a Principles & Practices Manual which includes a section titled "Filling Vacant Positions." That document indicates that the preferred method is to fill open positions with current TVA employees. Where, however, the TVA is unable to fill a position with a current employee, management is allowed to look elsewhere for candidates who have qualifications which "can be shown to be superior." The steps utilized in determining which external candidate to select for a position are "similar to those used for internal selections," and includes identifying the vacancy; developing a job description; classifying the position; preparing the vacancy announcement; developing a list of qualified candidates after reviewing personal history records, resumes, applications, and other background information; selecting candidates for structured interviews; conducting the interviews; and making the selection. (Docket Entry No. 16-3 at 1-2).

Pursuant to TVA practice and the "General Agreement Between Tennessee Valley Authority and the Trades and Labor Council" ("General Agreement"),[1] management first sought applicants from within the TVA. When no employees of the TVA applied for the positions, the TVA sought outside applicants and, in accordance with the General Agreement, sought referral of candidates from the Machinists' union. The union referred 17 journeyman Machinists who met the minimum requirements to the TVA, including Whitaker.

The Maintenance Manager at the Cumberland facility, Clay Cherry ("Cherry"), was the selecting manager for the open positions. Cherry convened a selection team of five people to assist with the selection process.

Three of the team members, – Machinist Foremen Kim Lewis and Edward E. Brooks, and Machinist and Job Steward Michael A. Vanzant – were craft and union representatives and subject

---

[1]This is the collective bargaining agreement covering the TVA trades and labor positions.

matter craft experts, who knew what skills and abilities the TVA needed and was looking for in new Machinists. The other two members of the selection team – Maintenance Supervisor Ricky Stanfield and Human Resource Consultant Anita Gutschall – were TVA management representatives.

To determine which of the minimally qualified journeyman Machinists the union referred would be selected, the selection team utilized a selection process which had been developed previously by the human resources staff at the Cumberland facility. That process involved developing a selection matrix which was designed to assess and score each candidate's overall qualifications based on objective, job-related criteria.

Each candidate's matrix score was based on two components. First, the candidate received a score for his or her "functions and accountabilities," which was determined from a paper review of the applicant's resume. This score took into account such things as whether the candidate had 1) a high school education; 2) completed a four-year apprenticeship or four years of experience as a Machinist; 3) knowledge of precision work (i.e, shop work); 4) knowledge of mechanical equipment, steam turbines, pumps, pulverizers, fans, heaters, etc.; and 5) experience in maintaining equipment in a fossil plant.

The second component was based upon a structured interview score, which was derived from scoring the candidate's response to sixteen job-related questions. The first question asked whether the applicant could perform the essential requirements of the job. Questions number 2 through number 6 related to the technical aspects of the job, and were intended to measure the interviewee's technical expertise. Questions number 7 through number 16 related to work-place behaviors and were designed to measure such things as teamwork, safety, problem-solving skills, training, attendance, motivation, and leadership.

Each question was weighted in terms of importance. For example, the question relating to responsibility for safety (question 9) was considered more important than whether the applicant had recently operated a basic machine tool, such as a lathe (question 6). The candidate was given a score of one to five for his response to a particular question. That score was based upon a consensus of those who participated in the selection process. In other words, the interview team consulted among themselves and determined collectively what particular grade an applicant would receive for his or her response to a given question.[2]

The two components were not given equal ratings in the selection process. Rather, interviews accounted for 70% of the overall score, with the theory being that a candidate's experience as shown on his or her resume does not always accurately reflect his or her ability to perform the job. The remaining 30% of the score was based upon the applicant's "functions and accountabilities" as reflected in the applicant's written materials.

Interviews for the Machinist positions were held on November 22 and 23, 2004. In all, sixteen of the seventeen referred candidates sat for an interview. The candidates ranged in age from 27 to 61 years of age, and none of the candidates reported having any physical or mental conditions which would preclude them from performing the Machinist job.

Each candidate was asked the same sixteen questions. At the conclusion of each interview day, the scores were calculated based on the predetermined weight to be given each question. The

---

[2] On the questionnaire form provided to the selection committee, each question had bulleted "look for" points that committee members were to take into account when considering an applicant's response to a question. For example, question number 10 was "Tell us about any formal or informal training that you have received in the last 5 years." The bulleted "look for" points to this question were "• skills relevant to job," and "• willingness to increase knowledge and skills base." (Docket Entry No. 16-15 at 1).

4

total scores were recorded on a selection matrix which was presented to Cherry for his review and approval.

Cherry approved the matrix. The top seven candidates and their respective scores and ages were:

| CANDIDATE | SCORE | AGE |
|---|---|---|
| • Terry Harris | 16,760 | 47 |
| • Terry Bryant | 16,205 | 30 |
| • Brian Johnson | 15,415 | 41 |
| • Jamie Hankins | 15,295 | 27 |
| • Eddie McKinley | 14,995 | 41 |
| • James Tolley | 14,975 | 41 |
| • Donnie Key | 13,975 | 44 |

(Docket Entry No. 11-3 at 52). Those remaining candidates and their respective scores and ages were:

| CANDIDATE | SCORE | AGE |
|---|---|---|
| • William Parker | 12,945 | 31 |
| • Mack Butts | 12,820 | 61 |
| • Ronnie Whitaker | 12,245 | 51 |
| • Larry Bryant | 9,965 | 50 |
| • Carl Adams | 9,075 | 37 |
| • Leslie Snow | 8,355 | 35 |
| • Gene Waller | 7,970 | unknown |
| • Larry White | 6,345 | 52 |
| • Douglas Pratt | 4,495 | unknown |

(Id.)

In April 2005, the TVA formally notified the candidates of the selection decisions. However, as indicated, the Machinist selection team calculated each applicant's matrix score at the conclusion of the interview day and Plaintiff's interview score was completed on November 23, 2004. With a total score of 12,245 which placed him tenth of the sixteen candidates who were interviewed, Plaintiff was not selected for one of the open Machinist positions.

5

Plaintiff was diagnosed with cancer of the vocal chord in "early 2005." (Pf. Aff. ¶ 1). Neither Plaintiff, nor the TVA knew about his cancer diagnosis at the time his matrix score was finalized, nor was the TVA aware of the diagnosis at the time Plaintiff was interviewed. In fact, Plaintiff informed the selection team at the time of the interview that he was capable of performing the full duties of the Machinist position without any special accommodations. Further, after the interview and before the selections were formally announced, Plaintiff was a contract worker at the TVA and, while he underwent treatment for his newly diagnosed cancer, that treatment did not affect his ability to work, nor did he need any accommodation in order to fulfill his work responsibilities.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the Court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to

support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. APPLICATION OF LAW

Based upon his not being selected for a Machinist position, Plaintiff filed suit in this Court alleging that Defendant violated the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 791 & 794, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. Defendants seek summary judgment on both claims.

#### A. Rehabilitation Act Claim

It is unnecessary for the Court to spend any significant amount of time on Plaintiff's Rehabilitation Act claim because it is clear that he cannot establish a *prima facie* case of disability discrimination. To establish a *prima facie* case under the Rehabilitation Act, Plaintiff must prove: (1) that he is disabled; (2) that he was otherwise qualified for the position he sought; and (3) that he was subject to discrimination solely by reason of his disability. Doe v. Salvation Army, 531 F.3d 355, 358 (6th Cir. 2008). Blume v. Potter, 289 Fed. Appx. 99, 103 (6th Cir. 2008), citing, Doherty v. Southern Coll. of Optometry, 862 F.2d 570, 573 (6th Cir. 1988).

As an initial matter, Plaintiff has failed to show that he has a disability within the meaning of the Rehabilitation Act. Under the Act, a "person with a disability" is one who has a physical or mental impairment which substantially limits one or more of such person's major life activities; has a record of such impairment, or is regarded as having such an impairment. 29 U.S.C. § 705(20)(B).

7

Major life activities are those "that are of central importance to daily life," Toyota Mfg. of Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002), and include such things as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii). "A substantial limitation of such an activity exists when the individual's ability to perform that activity is limited to a large degree" and, therefore, "[i]t is not enough for the impairment to cause merely moderate or intermittent interruptions in the performance of the activity." Brady v. Potter, 273 Fed. Appx. 498, 502 (6th Cir. 2008)(citation omitted).

In this case, Plaintiff has presented absolutely no evidence that he has a disability which substantially limits any major life activity. All the record shows is that he was diagnosed with throat cancer in early 2005 and thereafter underwent radiation treatment. Nevertheless, during this period he was able to perform his work without any accommodation. See, Greathouse v. Westfall, 212 Fed. Appx. 279, 381 (6th Cir. 2006)(it is incumbent upon plaintiff to show that a disability substantially limits a major life activity and a mere diagnosis of an ailment is insufficient to establish a disability).

More fundamentally, there is no evidence that, at the time the matrix scores became final and the selection decisions were made (albeit not yet formally announced), any of those involved in the decision-making process had any notion that Plaintiff may have been disabled. Quite the contrary, the evidence in the record shows that Plaintiff informed the selection committee that he was physically fit and fully able to perform the job of a Machinist. Indeed, Plaintiff himself did not know that he had throat cancer until after the matrix was finalized, making it impossible for the selection committee to render a decision which took into account any perceived disability. See, Harrison-Pepper v. Miami Univ., 103 Fed. Appx. 596, 601 (6th Cir. 2004)(employer does not violate

Rehabilitation Act when it takes action at a time it is unaware of an allegedly disabling condition); Williams v. Michigan Bd. of Dentistry, 39 Fed. Appx. 147, 149-50 (6th Cir. 2002)(same).

Plaintiff's *prima facie* case also fails because, under the Rehabilitation Act, he must show that he was subjected to discrimination *solely* because of a disability. 29 U.S.C. § 794(a). However, Plaintiff claims that he was discriminated against either because of his purported disability or age, and this is fatal to his Rehabilitation Act claim. See, Jones v. Pooter, 488 397, 409 (6th Cir. 2008)(while in many discrimination contexts "a plaintiff can prevail by showing a mixed motive – that is a showing that his employer's discriminatory animus was one of the reasons, but not the only reason, for his adverse treatment," the same is not true under the Rehabilitation Act which requires a plaintiff to prove he suffered an adverse action solely by reason of his disability).

In response to Defendant's Motion for Summary Judgment, Plaintiff does not adequately address his failure to establish a *prima facie* case under the Rehabilitation Act, but instead focuses on whether Defendants had a legitimate non-discriminatory reason for its employment action and whether that reason was pretextual. However, it is incumbent upon Plaintiff to first establish a *prima facie* case before any burden shifts to the Defendant. See, Willard v. Potter, 246 Fed. Appx. 485, 487 (6th Cir. 2008). Since Plaintiff has failed to forward sufficient evidence to present a jury question on whether (1) he was disabled or was perceived as disabled; and (2) he was not hired as a Machinist solely because of a supposed disability, summary judgment will be granted in favor of Defendant on Plaintiff's Rehabilitation Act claim.[5]

---

[5]The Court notes that even if Plaintiff were able to establish a *prima facie* case of disability discrimination, that claim would nevertheless fail because, as explained in the following section, Defendant has forwarded a legitimate non-discriminatory reason for the decision not to hire Plaintiff as Machinist, and Plaintiff has not shown that stated reason to be pretext for discrimination.

9

## B. Age Discrimination Claim

"To establish a prima facie case of age discrimination under the ADEA, plaintiff must show that (1) he was at least 40 years old at the time of the alleged discrimination, (2) he was subjected to an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was rejected and someone outside the protected class was selected." Harris v. Metro. Govt. of Nashville and Davidson County, 594 F.3d 476, 485 (6th Cir. 2010). The burden of establishing a *prima facie* case is not onerous, Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 411 (6th Cir. 2008) and Plaintiff has met that burden on his age discrimination claim.

The record shows that at the time of the employment decision in this case, Plaintiff was within the protected class, he was qualified for the position of Machinist, and he was not among those selected, even though two individuals younger than forty were selected. Further, Plaintiff has established that, even among those who were selected and were forty years old or older, several of them were more than six years younger than Plaintiff. See, Grosjean v. First Energy Corp., 349 F.3d 332, 336-40 (6th Cir. 2003)(establishing a bright-line rule that an age difference of more than six years between the plaintiff and the selected applicant is sufficient to establish the fourth element of the *prima facie* case of age discrimination where both applicants are within the protected class).

Where, as here, a plaintiff establishes a *prima facie* case of age discrimination, the burden of production shifts to the defendant to articulate a legitimate non-discriminatory reason for its action. Harris, 549 F.3d at 485. "When the defendant does so, the burden of production shifts back to the plaintiff to show that the employer's proffered reason was mere pretext for intentional age discrimination." Id. "The plaintiff retains the ultimate burden of proving that 'age was the but-for cause' of the employer's adverse action." Id. (citation omitted).

In this case, Defendant has articulated a legitimate non-discriminatory reason for not selecting Plaintiff for one of the open Machinist spots – he did not score as well as other applicants. In fact, he was tenth in the scoring, but there were only seven open slots. True, and as Plaintiff asserts, the interviews were given substantial weight and there existed the possibility that the scoring may have been skewed by subjective interpretations of a given candidate's answers. But while subjective evaluation processes may lead to discriminatory results, they "'are not illegal *per se*.'" Conner v. State Farm Mut. Auto. Ins. Co., 273 Fed. Appx. 438, 443 (6th Cir. 2008), quoting, Grano v. Dept. of Dev. of City of Columbus, 699 F.3d 836, 837 (6th Cir. 1983). "Rather, '[t]he ultimate issue in each case is whether the subjective criteria were used to disguise discriminatory action'" and generally it is not within the province of the court to question hiring criteria, "'even if [the decision-maker's hiring process was entirely subjective.'" Id. (citation omitted).

In an effort to show discrimination, Plaintiff claims that the stated reason given by Defendant was a pretext for age discrimination. In this vein, Plaintiff asserts that the selected candidates were provided copies of the interview questions before the interviews even took place. The problem with this assertion, however, is that Plaintiff provides no admissible evidence to support it.

Plaintiff has submitted an Affidavit in which he states that "there had been rumors that management leaked the interview questions to applicants they wanted selected" and that, after he was interviewed, Plaintiff "again heard the rumors that the interview questions were leaked to the ones management wanted hired." (Pf. Aff. ¶¶ 5 & 7). Such statements are not based on personal knowledge and "hearsay evidence cannot be considered on a motion for summary judgment." Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994). Moreover, "rumors, conclusory allegations and subjective beliefs . . . are wholly insufficient to establish a claim of discrimination as a matter of

11

law." Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir. 1992); see also, Smith v. Potter, 252 Fed. Appx. 224, 229 (10th Cir. 2007)("an unsubstantiated rumor is insufficient to resist summary judgment").

As further "proof" that the interview questions were leaked, Plaintiff points to the fact that James Tolley ("Tolley"), age 41, scored higher than Plaintiff and ranked sixth overall, even though Tolley is illiterate. Plaintiff cites the deposition testimony Tolley gave in a lawsuit Tolley filed against the TVA after he was not promoted to Machinist, Level III. In his deposition, Tolley admitted that he could not read or write, that during training someone would have to read written questions to him and write his responses, that occasionally he might have to have a question re-read to him or a word explained to him if he did not understand it, and that he did not tell the TVA he could not read or write until after he was given a Machinist position.

Plaintiff's reliance on Tolley's deposition testimony undercuts his present assertion that Tolley's illiteracy affects his ability to respond to oral questions. A review of the deposition indicates that Tolley had little difficulty in understanding most questions and he was able to formulate articulate responses to the questions presented.

Regardless, this Court cannot take the unsupported leap requested by Plaintiff and intuit that Tolley's inability to read renders him unable to perform well in an oral interview. To do so would be to engage in speculation and conjecture. However, "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Peters v. Lincoln Elec. Co., 285 F.3d 456, 470 (6th Cir. 2002); see, Watson v. City of Cleveland, 202 Fed. Appx. 844, 854 (6th Cir. 2006)(citation omitted)("'mere personal belief,

conjecture and speculation' . . . cannot help [plaintiff] avoid summary judgment"); Woythal v. Tex-Tenn Corp., 112 F.3d 243, 247 (6th Cir. 1997)(same).

In opposition to Defendants' Motion for Summary Judgment, Plaintiff relies upon Dunlap v. Tennessee Valley Authority, 519 F.3d 626 (6th Cir. 2008) wherein the United States Court of Appeals for the Sixth Circuit was presented with a claim that a matrix selection utilized by the TVA to fill a Boilermaker position was a pretext for discrimination. Leaving aside that the selection committee members in Dunlap were from a different department and not the same as those involved in this case, the evidence presented in this case falls far short of that presented in Dunlap in terms of suggesting pretext.

In Dunlap, unlike here, evidence was presented which suggested that the interview scores varied widely even on seemingly subjective questions such as a candidate's attendance record, with some points being added for "politeness" and an "extra half-point awarded for answering 'yes, ma'am.'" Id. at 631. More importantly, in Dunlap the scores appeared "to have been manipulated," in that "some of the score sheets were changed as many as seventy times," with "no evidence of legitimate reasons to support such revisions." Id.

Plaintiff presents no such evidence in this case, and instead appears to be arguing that merely because the selection process in Dunlap involved the use of a matrix selection system, ergo the process in this case was discriminatory because it, too, involved the use of a matrix selection system. But Dunlap does not hold that the use of a matrix is *per se* evidence of pretext, and the Sixth Circuit has consistently rejected claims challenging the use of matrices where there is no evidence to suggest that their use was a guise for discrimination. See, Owens v. Wellmont, Inc., 343 Fed. Appx. 18, 23 (6th Cir. 2009); Martin v. General Electric Co., 187 Fed. Appx. 553, 561-62 (6th Cir. 2006). Indeed,

13

in <u>Browning v. Dept. of Army</u>, 436 F.3d 692, 697 (6th Cir. 2006), the Sixth Circuit observed that "[s]everal courts . . . have held that employers may use matrices that reward applicants who meet subjective criteria . . . even though the matrix scores were 'susceptible to subjective determinations'" and their use is "irrelevant in the absence of a showing that the matrix inaccurately measured job skills or that the matrix was used as a pretext to mask discrimination."  Because a plaintiff claiming discrimination has the ultimate burden of persuasion, it is incumbent upon him or her to show "a link between the subjective matrix criteria and any discriminatory intent," and the mere "reliance on subjective matrix criteria does not support an inference of discrimination."  <u>Id</u>.

Moreover, <u>Dunlap</u> was a race discrimination case, meaning that it was incumbent upon plaintiff to show only that race was *a* factor in his non-selection for the Boilermaker position. Present Plaintiff's claim is age discrimination and the United States Supreme Court recently held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor.  <u>Gross v. FBL Fin. Servs., Inc.</u>, 129 S.Ct. 2343, 2351 (2009).  In fact, "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision."  <u>Id</u>. at 2352.

Here, Plaintiff has not presented a jury question on whether his age was the *sole* reason for his non-selection.  Rather, he claims that he might not have received the position because of his supposed disability or the fact that the TVA perceived him as being disabled.  He also suggests that he was not selected because of favoritism in that the TVA preselected those they wanted and provided them copies of the interview questions.  Post-<u>Gross</u>, it is incongruous to posit such alternate

14

theories because the very presentation of different reasons for an action suggest that age was not the *sole* reason for the action. See, McFadden v. Krause, 2009 WL 4837805 at *1 (9th Cir. 2009)(after Gross there "is no basis for recognizing a combined age/sex discrimination claim, as a different analytical framework applies to each statute"); Huff v. Power Partners, Inc., 2010 WL 797201 at *7 (M.D. Ga. 2010)(italics added)("the ADEA does not authorize a mixed-motive age discrimination claim, so even if Plaintiff had shown that age was a motivating factor in the decision to terminate him . . . he still could not show that he was terminated *because* of his age"); Culver v. Birmingham Bd. of Educ., 646 F. Supp. 2d 1272, 1272 (N.D. Ala. 2009)("Prior to Gross, it was permissible to allege alternative proscribed employer motives, one of which is plaintiff's age" but "[t]hat permission has now been withdrawn by the Supreme Court.").

In sum, Defendant has articulated a legitimate reason for its non-selection of Plaintiff and Plaintiff has offered nothing from which a jury could conclude that the stated reason (Plaintiff's low score) was a lie, or from which a jury could conclude that Plaintiff's age was the real reason for its decision. To survive summary judgment, Plaintiff must show "both that the reason was false, and that discrimination was the real reason" for his non-selection. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). Plaintiff has not done so in this case.

## IV. CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment (Docket Entry No. 8) will be granted and Plaintiff's Complaint for disability and age discrimination will be dismissed.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE